IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SHARON WHITESIDE, as special administrator of the estate of BRIAN E. WHITESIDE, deceased, </br></br>　　　　　　　　Plaintiff,</br>　v.</br></br>PRECISION AIRMOTIVE, L.L.C., a limited liability corporation, PRECISION AIRMOTIVE CORPORATION, a corporation, RUSSELL ROMEY, an individual and d/b/a/ D&G SUPPLY,</br></br>　　　　　　　　Defendants. | Case No. 06 C 6209</br></br>Judge Virginia M. Kendall |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Sharon Whiteside ("Whiteside"), as the special administrator of the estate of her late brother, Brian E. Whiteside ("Brian"), brought this action against defendants Precision Airmotive, L.L.C. ("Precision"), Precision Airmotive Corporation ("PAC"), and Russell Romey, an individual doing business as D&G Supply ("D&G," together with Precision and PAC, "Defendants")[1]. Whiteside alleges that on September 30, 2004, Brian perished in the crash of a 1962 model B95A aircraft manufactured and designed by Beech Aircraft Corporation. Whiteside further alleges that certain defective parts of the aircraft caused the crash and that those defective parts were either serviced, overhauled or manufactured by D&G or PAC (certain of the assets and liabilities of which were assumed by Precision at some point subsequent to the dissolution of PAC, which occurred between April 1, 2000 and September 30, 2004). Now before this Court is Whiteside's motion to

---

[1] The Court's docket does not indicate that an appearance has been filed for Russell Romey.

stay this action under *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976).

## Background

Whiteside's twelve-count Complaint, filed in the Circuit Court of Cook County, Illinois on September 29, 2006, purports to state the following claims arising from the crash in which Brian lost his life: (i) product liability - wrongful death against D&G; (ii) product liability - survival action against D&G; (iii) negligence - wrongful death against D&G; (iv) negligence - survival action against D&G; (v) breach of warranty - wrongful death against D&G; (vi) breach of warranty - survival action against D&G; (vii) product liability - wrongful death against Precision and PAC; and (viii) product liability - survival action against Precision and PAC; (ix) negligence - wrongful death against Precision and PAC; (x) negligence - survival action against Precision and PAC; (xi) breach of warranty - wrongful death against Precision and PAC; and (xii) breach of warranty - survival action against Precision and PAC. Pursuant to 28 U.S.C. §§ 1332, 1441 and 1446, the action was removed to this Court on November 14, 2006.

On the same day that this lawsuit was filed in the Circuit Court of Cook County, Illinois, Whiteside filed another lawsuit against Defendants in the Circuit Court of Kenosha County, Wisconsin (the "Wisconsin Action"). The complaint in the Wisconsin Action contains the same factual allegations and purports to state exactly the same claims against exactly the same defendants as does the complaint in this action. The Wisconsin Action also includes claims against additional defendants arising out of the same airplane crash.

On February 20, 2007, defendants Precision and PAC filed a motion for summary judgment in this action, arguing that the General Aviation Revitalization Act's ("GARA") statute of repose

bars Whiteside's claims. A week later, Whiteside filed the instant motion to stay these proceedings pending resolution of the Wisconsin action.

## Discussion

In *Colorado River*, the Supreme Court held that "there are principles unrelated to considerations of proper constitutional adjudication and regard for federal-state relations which govern in situations involving the contemporaneous exercise of concurrent jurisdictions, either by federal courts or by state and federal courts." 424 U.S. at 817 (citing *Kerotest Mfg. Co. v. C-O-Two Fire Equipment Co.*, 342 U.S. 180, 183 (1952). The Court emphasized, however, the "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." *Id*. "The 'clearest of justifications' must be present for a federal court to stay a proceeding pending completion of a state action." *Tyrer v. City of South Beloit*, 456 F.3d 744 (7th Cir. 2006) (quoting *Colorado River*, 424 U.S. at 819). The Seventh Circuit "[has] held in a number of decisions, beginning with *Evans Trasnp. Co. v. Scullin Steel Co.*, 693 F.2d 715, 717-18 (7th Cir. 1982), that a stay, not a dismissal, is the appropriate procedural mechanism for a district court to employ in deferring to a parallel state court proceeding under the *Colorado River* doctrine." *Selmon v. Portsmouth Drive Condo. Ass'n*, 89 F.3d 406, 409 (7th Cir. 1996); *see also*, *CIGNA Healthcare of St. Louis, Inc. v. Kaiser*, 294 F.3d 849, 851 (7th Cir. 2002) (same).

To determine whether a stay is appropriate under the *Colorado River* doctrine, a district court must first determine "whether the concurrent state and federal actions are actually parallel. Then, once it is established that the suits are parallel, the court must consider a number of non-exclusive factors that might demonstrate the existence of exceptional circumstances." *Tyrer*, 456 F.3d at 751 (quoting *Clark v. Lacy*, 376 F.3d 682, 685 (7th Cir. 2004)) (internal quotation marks omitted). The Supreme Court's opinion in *Colorado River* set forth four such factors: (i) the difficulties posed

3

when a state and federal court concurrently assume jurisdiction over the same *res*; (ii) the inconvenience of the federal forum; (iii) the desirability of avoiding piecemeal litigation; and (iv) the order in which the state and federal proceedings were filed. *Tyrer*, 456 F.3d at 751 (citing *Colorado River*, 424 U.S. at 818-19). In *Moses H. Cone*, the Court identified two additional factors relevant to the exceptional circumstances inquiry: (i) whether state or federal law provides the rule of decision; and (ii) whether the state action will adequately protect the federal plaintiff's rights. *Id.* (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 23-27 (1983)). The Seventh Circuit has refined the exceptional circumstances analysis to a consideration of ten factors:

> 1) whether the state has assumed jurisdiction over property; 2) the inconvenience of the federal forum; 3) the desirability of avoiding piecemeal litigation; 4) the order in which jurisdiction was obtained by the concurrent forums; 5) the source of governing law, state or federal; 6) the adequacy of the state-court action to protect the federal plaintiff's rights; 7) the relative progress of state and federal proceedings; 8) the presence or absence of concurrent jurisdiction; 9) the availability of removal; and 10) the vexatious or contrived nature of the federal claim.

*Id.* at 754 (citing *Caminiti & Iatarola, Ltd. v. Behnke Warehousing, Inc.*, 962 F.2d 968, 701 (7th Cir. 1992). No single factor is necessarily determinative; in the end, what is required is "a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counseling against that exercise." *Id.* at 754-55.

I. **This Action and the Wisconsin Actions are Parallel.**

There need not be formal symmetry between to actions in order for the actions to be "parallel" for purposes of the *Colorado River* doctrine; instead, generally, two actions are parallel "when substantially the same parties are contemporaneously litigating substantially the same issues" in different fora. *Id.* at 752 (citing *Interstate Material Corp. v. City of Chicago*, 847 F.2d 1285, 1288 (7th Cir. 1988). In order to determine whether two suits are parallel, a district court should "examine

4

whether the suits involve the same parties, arise out of the same facts and raise similar factual and legal issues." *Id.* (citing *Clark*, 376 F.3d at 686).

Comparing the complaint in this case with the complaint filed in the Wisconsin Action makes clear that the two suits are parallel. Each suit involves the same parties; Whiteside is the plaintiff in both actions and each of the defendants in this case is also a defendant in the Wisconsin Action. Both suits arise out of exactly the same facts. Indeed, the allegations against each of the defendants in the complaint filed in the Wisconsin Action are, in places, word-for-word identical to the allegations against the defendants in this case. Both complaints allege that certain parts – a fuel servo and/or a flow divider – on the B95A aircraft were defective and unreasonably dangerous and caused the crash that killed Brian. Both complaints articulate the same theories of liability in the same causes of action against the same defendants arising from the same connections to or responsibilities for the fuel servo and/or flow divider at issue. Accordingly, the Court finds that this case and the Wisconsin Action are parallel.

## II. Exceptional Circumstances Warrant a Stay Pending Resolution of the Wisconsin Action.

An examination of the factors relevant to an exceptional circumstances analysis under the *Colorado River* doctrine indicates that a stay of this action is appropriate.[2] The first factor is not relevant to the Court's decision; there is no indication that the Wisconsin court has assumed

---

[2] The Court cannot help but note the irony of this situation. Plaintiff filed the same lawsuit against the same defendants in two different courts. Plaintiff now seeks to stay this action by arguing, in part, that it would be more convenient for Defendants not to be forced to defend two lawsuits at once and that a stay would help to conserve judicial resources. True. But this is, to put it gently, a bold argument for Plaintiff to make; if she were truly concerned about keeping things convenient for Defendants and conserving judicial resources, she might have elected not to file the same lawsuit against the same defendants in two different courts. Situational irony notwithstanding, the Court is not persuaded that allowing both suits to continue simultaneously would result in the wise use of limited judicial resources.

jurisdiction over any property. Nor is there any indication that this federal forum is an inconvenient forum for resolution of the disputes between these parties.

The desirability of avoiding piecemeal litigation weighs heavily in favor of a stay. "Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results." *Tyrer*, 456 F.3d at 755 (citing *LaDuke v. Burlington N. R.R. Co.*, 879 F.2d 1556, 1560 (7th Cir. 1989)). As previously mentioned, Plaintiff has brought identical actions against identical defendants in two different courts. Accordingly, similar issues will almost certainly be litigated simultaneously in different fora. This possibility gives rise to two potential problems: (1) a party might attempt to move the proceedings along more or less quickly in one forum in order to ensure that the court most likely to rule in its favor will decide a particular issue first; and (2) one court, unaware that the other has already ruled, may resolve an issue differently and create a conflict between the two fora. *Id.* at 756. Allowing these two suits to proceed concurrently would waste the parties' resources, risk duplicative or conflicting rulings and reward a strategic gamesmanship that has no place in a dual system of federal and state courts.[3] *Id.*

The order in which jurisdiction was obtained by the concurrent fora weighs only slightly in favor of a stay in this action. The Wisconsin state court obtained jurisdiction before this Court, but only because this action was removed to this Court from the Circuit Court of Cook County, Illinois, where it was filed on the same day as the Wisconsin Action. The source of the governing law may be a wash. All of the causes of action alleged in the Complaint arise under state law, but Precision

---

[3] In opposition to the Motion to Stay, Precision and PAC argue persuasively that the Motion to Stay itself is an example of such gamesmanship. They point out that Plaintiff's Motion to Stay was filed only one week after their Motion for Summary Judgment and they suggest that this Court "should reject Plaintiff's attempt to prevent this Court from deciding [the] important federal issue" raised by their Motion. (Opp. to Pltf.'s Mtn. to Stay at p. 2). The Court recognizes that the timing of Plaintiff's Motion to Stay could be interpreted as gamesmanship and the decision to stay this action pending the resolution of the Wisconsin Action should not be interpreted as condoning any such conduct. Indeed, as expressed above, the stay is intended to eliminate future opportunities to engage in gamesmanship.

and PAC have raised a federal defense – GARA's statute of repose – in their Motion for Summary Judgment and they urge that the federal defense will be dispositive of all claims stated against them.

Of the remaining factors, only two are relevant to the disposition of Whiteside's Motion to Stay. The sixth factor weighs in favor of a stay: there is no argument that the Wisconsin Action is inadequate to protect Whiteside's rights. The Seventh factor may weigh slightly in favor of denying the Motion, as there is no strong argument that matters have progressed significantly further in the Wisconsin state court than they have in this Court. Precision and PAC argue that this action is further along because they have filed a motion for summary judgment in this case. But that motion is not fully briefed and could be refiled with relative ease in the Wisconsin state court, which is perfectly capable of evaluating the federal issue presented therein. Indeed, Precision and PAC's Motion for Summary Judgment cites to at least one state court decision for the proposition that "[c]ourts have consistently upheld GARA's 18-year statute of repose." (Mem. in Support of Mtn. for Summary Judgment at 9) (citing *Campbell v. Parker Hannifin Corp.*, 82 Cal. Rptr. 2d 202 (Cal. Ct. App. 1999)).

On balance, consideration of the factors relevant to the "exceptional circumstances" analysis indicates that a stay is appropriate under the *Colorado River* doctrine. Accordingly, this action shall be stayed pending resolution of the Wisconsin Action. Upon the resolution of the Wisconsin Action, the parties shall advise the Court as to whether the stay should be lifted or whether this action should be dismissed.

So ordered.

_____
Virginia M. Kendall, United States District Judge
Northern District of Illinois

Date: May 29, 2007